[Cite as *State v. Dibble*, 2014-Ohio-5754.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 13AP-798 |
| v. | : | (C.P.C. No. 10CR-03-1958) |
| Lawrence A. Dibble, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on December 30, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee.

*Meeks and Thomas Co., LPA*, and *David H. Thomas*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} Defendant-appellant, Lawrence A. Dibble, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of multiple counts of voyeurism and one count of sexual imposition and denying his motion to suppress.

{¶ 2} On February 2, 2010, two young women, E.K. and E.S., a minor, informed Upper Arlington Police Detective Andrew Wuertz that a teacher at The Wellington School had sexually assaulted E.S. on school grounds. On February 3, 2010, Detective Wuertz appeared before a judge and requested a warrant to search appellant's residence. The search warrant affidavit states:

On February 2, 2010 Victim # 1 [E.S.] reported to the Upper Arlington Police Department that while a student at The Wellington School, one of her teacher's, Lawrence A. Dibble touched her inappropriately. Victim # 1 stated that she was rehearsing line for a play with Dibble in the school when he asked for a reward for getting his lines correct. He asked to touch Victim # 1's stocking on her leg. Upon touching the stocking Dibble then proceeded to run his hand up under Victim # 1's skirt brushing his fingers across her vaginal area. Victim # 1 stated she was shocked and froze as Dibble then ran his hands over her buttocks, and lower abdomen area. Victim # 2 [E.K.] was with Victim # 1 while she made the report. Victim # 2 stated she also had inappropriate contact with Dibble. Victim # 2 stated it was after she had graduated high school where Dibble had also been her teacher. Victim # 2 stated that Dibble had taken photo's of her nude vaginal area during one of their meetings where inappropriate touching was involved. Victim # 2 told investigators that Dibble used a digital camera to take the photo's, and made her wear a pillow case over her head while he took them.

On February 2, 2010 Victim # 1 went to The Wellington School at the direction of the Upper Arlington Police wearing a recording device. She had a conversation with Dibble about the inappropriate touching where he stated "I just wasn't thinking."

Investigators from Upper Arlington believe Dibble's computers, cameras, media storage devices, etc. may contain correspondence, and photos to substantiate Victim # 1 and Victim # 2's claims.

(Sic passim.)

{¶ 3} On February 3, 2010, the judge issued a warrant authorizing the seizure of computers, cameras, and data storage media. That same day, several police officers, including Detective Wuertz, executed the warrant at 6595 Brock Street, Dublin, Ohio. The search resulted in the seizure of several items, including a laptop computer, a camera, and several videotapes and DVDs. On March 29, 2010, a Franklin County Grand Jury indicted appellant on 21 counts of voyeurism, in violation of R.C. 2907.08, and one count of sexual imposition, in violation of R.C. 2907.06. None of the charges related to E.K.

{¶ 4} On May 12, 2010, appellant filed a motion to suppress evidence obtained pursuant to a search warrant. On June 29, 2010, the trial court conducted an evidentiary

hearing on the motion to suppress. As a result of the hearing, the trial court granted appellant's motion to suppress upon finding that Detective Wuertz deliberately included false and misleading information in his search warrant affidavit. Specifically, the trial court found that Detective Wuertz falsely represented E.K. as a "victim" inasmuch as he knew that E.K. was an adult when appellant committed the sexual acts described in the affidavit and that she had given consent.

{¶ 5} The state appealed the trial court's judgment to this court in *State v. Dibble,* 195 Ohio App.3d 189, 2011-Ohio-3817 (10th Dist.) We overruled the state's assignments of error and affirmed the judgment of the trial court. *Id.* The state appealed our decision to the Supreme Court of Ohio. In *State v. Dibble,* 133 Ohio St.3d 451, 2012-Ohio-4630, the Supreme Court reversed the judgment of this court and remanded the case to the trial court for another hearing on the motion to suppress. The opinion of the Supreme Court provides, in relevant part, as follows:

> [Appellant's] alleged behavior with each, including back rubs behind closed doors, other inappropriate touching, and photographing both women in see-through unitards without any undergarments, if true, clearly made victims of these young women. Therefore, the detective's use of the term "victim" to refer to E.K., even though the sexual activity regarding E.K. that was described in the search-warrant affidavit occurred after she was 18 and had graduated, did not amount to his knowingly and intentionally including false information in his search-warrant affidavit.
>
> Since the trial judge's analysis of whether to suppress the evidence began with his conclusion that the detective's testimony was false and we have called into question his basis for that conclusion, we find that consideration of the other assignments of error, which relate to later determinations in the judge's analysis, would be premature. Consequently, we reverse the judgment of the court of appeals and remand this cause to the trial court to hold a new suppression hearing consistent with this opinion.

*Id.* at ¶ 25-26.

{¶ 6} On remand, the trial court conducted a new suppression hearing. In a decision dated April 30, 2014, the trial court denied appellant's motion to suppress the evidence uncovered in the search of his home. The trial court concluded that, even though

Detective Wuertz's affidavit did not provide a substantial basis for concluding that probable cause existed, the officers obtained the evidence from appellant's home while acting in objectively reasonable reliance on a search warrant issued by a detached and neutral judge. In reaching its conclusion, the trial court relied on the "good faith" exception to the exclusionary rule first articulated by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), and later adopted by the Supreme Court of Ohio in *State v. George*, 45 Ohio St.3d 325 (1989).

{¶ 7} As a result of the trial court's decision, appellant entered a plea of no contest to each of the counts in the indictment. On August 15, 2013, the trial court convicted appellant of all charges and sentenced him to a prison term of four years, followed by five years of mandatory post-release control. In addition, the trial court classified appellant as a Tier I sexual offender with a 15-year registration requirement.

{¶ 8} Appellant timely appealed to this court from his conviction and sentence and assigns the following as error:

> The trial court erred in overruling Appellant's motion to suppress evidence and finding that police acted in good faith reliance on a search warrant that was not supported by probable cause, where the officers' reliance on the warrant was not objectively reasonable. This error by the trial court deprived Appellant of his right to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.

{¶ 9} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. *State v. Helmbright,* 10th Dist. No. 11AP-1080, 2013-Ohio-1143. Accordingly, an appellate court's standard of review of a motion to suppress is two-fold. *State v. Holland*, 10th Dist. No. 13AP-790, 2014-Ohio-1964, ¶ 8, citing *State v. Reedy,* 10th Dist. No. 05AP-501, 2006-Ohio-1212, ¶ 5. First, we must determine whether competent, credible evidence supports the trial court's findings. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Second, we must independently determine whether the facts satisfy the applicable legal standard, without giving any deference to the conclusion of the trial court. *Id*. We also note that federal appellate court's apply the same standard of review to the district court's determination of probable cause and the application of the good-faith exception. *United States v. Buffer*,

6th Cir. No. 12-5052 (June 24, 2013), citing *States v. Leake*, 998 F.2d 1359, 1362, 1366 (6th Cir.1993).

{¶ 10} However, "[i]n reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George* at paragraph two of the syllabus, citing *Illinois v. Gates*, 462 U.S. 213 (1983).

{¶ 11} We must first address the state's right to challenge the trial court's initial determination that the search warrant was not issued upon probable cause. For the following reasons, we find that the state may not challenge the trial court's probable cause determination in this appeal.

{¶ 12} R.C. 2945.67(A) provides that "[a] prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case * * * which * * * *grants a motion * * * to suppress evidence.*" (Emphasis added.) This statute grants the state a substantive, but limited, right of appeal. *In re T.A.*, 10th Dist. No. 07AP-327, 2007-Ohio-4417, ¶ 6, citing *State v. Thompson*, 10th Dist. No. 03AP-841, 2004-Ohio-3229, ¶ 12. Because the trial court denied appellant's motion to suppress the evidence obtained in the search of his home, the statute does not permit an appeal by the state.

{¶ 13} " '[W]hen the prosecution wishes to appeal a judgment of the trial court not expressly provided for in R.C. 2945.67(A), it must ask for leave to appeal under App.R. 5(C).' " *In re A.E.*, 10th Dist. No. 08AP-59, 2008-Ohio-4552, ¶ 10, quoting *State v. Mitchell*, 6th Dist. No. L-03-1270, 2004-Ohio-2460, ¶ 9. Under App.R. 5(C), "[w]hen leave is sought by the prosecution from the court of appeals to appeal a judgment or order of the trial court, a motion for leave to appeal *shall be filed with the court of appeals within thirty days from the entry of the judgment and order sought to be appealed* and

shall set forth the errors that the movant claims occurred in the proceedings of the trial court." (Emphasis added.)

{¶ 14} The state has not sought leave from this court to appeal the trial court judgment. Consequently, this court is without jurisdiction to consider the state's challenge to the trial court's probable cause ruling in this appeal. *Thompson* at ¶ 21.

{¶ 15} The Fourth Amendment provides that "no Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis added.) However, in *Leon,* the United States Supreme Court recognized that "the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *George* at paragraph three of the syllabus. In other words, if an affidavit lacks probable cause, an exception to the exclusionary rule exists where " 'the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate.' " *United States v. Watson*, 498 F.3d 429, 431 (6th Cir.2007), quoting *Massachusetts v. Sheppard,* 468 U.S. 981, 987-88 (1984). "This is known as the good-faith exception." *United States v. Rose*, 714 F.3d 362, 367 (6th Cir.2013).

{¶ 16} The good-faith exception to the exclusionary rule is limited in its application. *George* at 331; *Leon* at 923. The *Leon* court cautioned that "[s]uppression remains an appropriate remedy" when the court finds that any one of the following four circumstances exist:

> (1) " * * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * * "; (2) " * * * the issuing magistrate wholly abandoned his judicial role * * * "; (3) *an officer purports to rely upon* " * * * *a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable*' "; or (4) " * * * depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. * * * "

(Emphasis added.)  *George* at 331; *Leon* at 923.

{¶ 17} An affidavit lacks the requisite *indicia of probable cause* if it is a "bare bones" affidavit. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir.2005), citing *Leon* at 914-23.   The inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than that involved in determining whether an affidavit provides a substantial basis for the magistrate's conclusion of probable cause. *Id.* at 748, citing *Leon* at 914-23. The Sixth Circuit has defined a "bare bones" affidavit as one that states "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* at 748-49, citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.1996).

{¶ 18} Appellant argues that in conducting the "good faith" analysis, the trial court failed to consider whether Detective Wuertz's affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. We agree.

{¶ 19} In making its "good faith" determination, the trial court engaged in the following analysis:

> [T]his Court cannot conclude that the statements made by Detective Wuertz within the affidavit qualify as statements that the "affiant knew was false or would have known was false except for his reckless disregard of the truth" as required under the first category listed above. *State v. George, supra.*
>
> In addition, there is no argument, nor does this Court suggest, that the issuing Judge wholly abandoned her role. *And, this is not an extraordinary circumstance where the warrant or affidavit were so inadequate in terms of its particularity of place to be searche[d] or items to be seized as to qualify under the other remaining Leon categories.*
>
> As such, this Court finds that Detective Wuertz acted in objectively reasonable reliance on a search warrant issued by a detached and neutral judge under the good faith exception to the exclusionary rule.

(Emphasis added.) (Decision, 9.)

{¶ 20} Similarly, the Sixth Circuit Court of Appeals has applied the good-faith exception where the affidavit "contained a minimally sufficient nexus between the illegal

activity and the place to be searched" but did not contain sufficient information to establish probable cause. *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir.2004). *See also United States v. Van Shutters,* 163 F.3d 331, 336 (6th Cir.1998) (good-faith exception applied where the affidavit described the residence to be searched and the items sought, but connected the residence to defendant's counterfeiting scheme only by stating that the residence "was available" to the defendant); *United States v. Schultz,* 14 F.3d 1093, 1098 (6th Cir.1994) (good-faith exception applied where officer averred that, based on his training and experience, he believed that evidence of defendant's illegal drug trafficking could be found in certain safe deposit boxes). *But see Laughton* (suggesting that court erred in considering the officer's expertise inasmuch as the good-faith standard is an objective one); *United States v. Hove*, 848 F.2d 137 (9th Cir.1988) (No reasonable officer could have believed that the warrant to search the home of defendant's father was valid given the failure of the affidavit to articulate any nexus between the home and defendant's menacing conduct toward her ex-husband.).

{¶ 21} Although the trial court concluded that the good-faith exception applied in this case, the trial court's decision contains no meaningful consideration of whether Detective Wuertz's affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. We cannot infer any such consideration from the trial court's statement that "this is not an extraordinary circumstance where *the warrant or affidavit* were so inadequate in terms of its particularity of place to be searche[d] or items to be seized as to qualify under the *other remaining Leon categories.*" (Emphasis added.)  (Decision, 9.)  In our opinion, this statement may only be interpreted as a determination of the facial validity of the warrant itself. It is not a proper determination whether Detective Wuertz's affidavit is so bare bones as to preclude application of the good-faith exception.

{¶ 22} As noted above, the trial court found that the affidavit did not provide a substantial basis to conclude that probable cause existed. Indeed, the trial court expressly stated that "[t]he *affidavit* does not contain any information that establishes there is a *substantial* basis to conclude that evidence of gross sexual imposition or evidence of correspondence or photographs that substantiate E.S.'s claims would be found in Defendant's home." (Emphasis sic.)  (Decision, 5.)   The trial court also noted that "[t]he

information contained in the affidavit is insufficient to create a nexus between Defendant's home * * * and illegal conduct that took place at the school." (Decision, 7.)

{¶ 23} Having determined that the information in the affidavit fails to supply probable cause to search appellant's home for evidence of gross sexual imposition, the trial court was obligated to conduct further examination of the affidavit to determine whether it is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." However, the trial court's decision contains no discussion or analysis whether the information in the affidavit satisfies the less demanding standard set forth in *Leon* and *George.* Such an examination is critical to a proper determination whether to apply the good-faith exception to the exclusionary rule.

{¶ 24}  In short, we find that the trial court erred when it failed to fully consider whether the circumstances of this case precluded the application of the good-faith exception. Accordingly, we sustain appellant's sole assignment of error. Consistent with the reasoning of the Supreme Court in *Dibble*, we shall remand the case for the trial court to re-examine Detective Wuertz's *affidavit* and to consider whether it is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. We will not make that determination in the first instance in this appeal. *Dibble* at ¶ 26.

{¶ 25} Appellant also contends that the deficiencies in the warrant foreclose application of the good-faith exception. We disagree. The warrant issued by the judge provides that Upper Arlington police may enter appellant's residence to diligently search for the following:

> Evidence of the crime of Gross Sexual Imposition, to include Computers, printers, scanners, photographs, cameras, video cameras, videotapes including memory devices and storage media, associated peripheral equipment and any and all types of related computer equipment and electronic storage media (See Attachment A) as well as fruits and instrumentalities of other crimes as yet unknown.[1]

{¶ 26} As a general rule, when determining whether a search warrant satisfies the Fourth Amendment's particularity requirement, reviewing courts employ a standard of practical accuracy rather than technical precision. *United States v. Otero*, 563 F.3d 1127

---

[1] "Attachment A" describes, in more detail, the types of devices in which electronic information may be stored; it lists associated computer documentation subject to seizure, and it identifies documents that may provide "indicia of occupancy."

(10th Cir.2009). The good-faith exception under *Leon* and *George* requires that the deficiencies in the warrant as to particularity must not be so egregious that the executing officers cannot reasonably presume it to be valid.

{¶ 27} The warrant in this case is not so deficient in particularizing the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. First, the place to be searched is clearly identified as appellant's home address, which was known to the officers. Second, though the warrant contemplates the seizure of virtually all electronic and photographic evidence relevant to the crime of gross sexual imposition, given the nature of the factual allegations in Detective Wuertz's affidavit, a more specific description of the items to be seized would prove difficult to fashion.

{¶ 28} Moreover, in our opinion, the applicability of the good-faith exception in this case depends much more on the trial court's examination of Detective Wuertz's affidavit for the requisite indicia of reliability than its examination of the warrant for the lack of particularity. As this case is currently postured, we cannot say that there are defects on the face of the warrant that would preclude the application of the good-faith exception to the exclusionary rule.

{¶ 29} For the foregoing reason, we hold that the trial court erred by denying appellant's motion to suppress without first determining whether Detective Wuertz's affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Leon; George*. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and remand the case to that court for further proceedings in accordance with law, consistent with this decision.

*Judgment reversed and cause remanded.*

SADLER, P.J., and CONNOR J., concur.

———————————