[Cite as *State v. Reynolds*, 2025-Ohio-2347.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| STATE OF OHIO | : | Hon. Andrew J. King, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Kevin W. Popham, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2024-CA-0052 |
| JAIDEN REYNOLDS | : | |
| | : | |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:          Appeal from the Richland County Court of
                                  Common Pleas, Case No. 2023-CR-0597R

JUDGMENT:                         Reversed and Remanded

DATE OF JUDGMENT ENTRY:           July 2, 2025

APPEARANCES:

For Plaintiff-Appellee

JODIE M. SCHUMACHER
Prosecuting Attorney
BY: MEGAN HOBART
38 South Park Street
Mansfield, OH 44902
*Popham, J.,*

For Defendant-Appellant

JOSEPH C. PATITUCE
CATHERINE R. MEEHAN
16855 Foltz Industrial Parkway
Strongsville, OH 44149

{¶1} Defendant-Appellant Jaiden Reynolds ("Reynolds") appeals the May 15, 2024, Judgment Entry of the Richland County Court of Common Pleas overruling his motion to suppress evidence. For the reasons explained below, we reverse the trial court's judgment.

*Facts and Procedural History*

{¶2} On April 20, 2023, officers with the Mansfield Police Department responded to a ShotSpotter alert indicating possible gunfire in the vicinity of 19 Dunbilt Court ("Residence") in Mansfield, Ohio. Officer Eric Schaaf testified that ShotSpotter technology provides only a general area of suspected gunfire and may require "guesses about the locations." Supp.T. at 45. Officer Schaaf also testified that several 9-1-1 calls were received reporting gunfire in the area. *Id.*

{¶3} Upon arriving in the area, Officer Schaaf observed a white Chevrolet Malibu reversing from the driveway of the Residence. The vehicle was subsequently stopped, and its occupants were detained. Shortly thereafter, individuals near 9 Dunbilt Court flagged down Officer Schaaf and reported a body located behind 8 Dunbilt Court. Officer Schaaf proceeded to that location and discovered an unresponsive male with apparent gunshot wounds to the chest. He rendered aid until emergency medical personnel arrived. The victim later succumbed to his injures.

{¶4} Officer Schaaf then secured the area with perimeter tape and began surveillance. Supp.T. at 22, 24. He testified that officers were attempting to determine what had occurred, where it had occurred, and the possible location of any suspects. *Id.* at 25. During this process, Officer Schaaf observed a truck near 8 Dunbilt Court with apparent bullet damage and a shell casing on the porch of the Residence.

{¶5} Further investigation revealed additional shell casings scattered throughout the area. Supp.T. at 51-53. Although Officer Schaaf could not recall the source of the information, he testified that someone at the scene reported observing individuals running in and out of the Residence. *Id.* at 28.

{¶6} Due to the chaotic nature of the scene and a limited number of officers, law enforcement did not immediately attempt to enter the Residence.

{¶7} While monitoring the Residence, Officer Schaaf and another officer heard what they believed to be a television or stereo from within, and observed movement in a window of, the Residence. Supp.T. at 31. More than an hour passed after Officer Schaaf's arrival before officers entered the Residence. *Id.* At that time, no blood or bullet damage was observed on the exterior of the Residence. *Id.* at 53-54. The State stipulated that there were no bullet holes in the Residence. *Id.* at 57. Officer Schaaf denied hearing any calls for help from inside the Residence and could not recall whether officers knocked and announced their presence prior to entry of the Residence. *Id.* at 54, 57.

{¶8} Upon entry of the Residence, officers observed a firearm on a table near the front door. No injured persons or signs of bleeding were found. Supp.T. at 63. During a protective sweep, officers located suspected narcotics, drug paraphernalia, and a second firearm on the second floor. Officers did not locate any individuals within the Residence.

{¶9} Based on the items observed in plain view, officers obtained a search warrant. The warrant and its supporting affidavit identified Jaiden Reynolds as a resident of the Residence (19 Dunbilt Court). The warrant was signed and subsequently executed.

{¶10} On August 11, 2023, Reynolds was indicted on three counts: (1) Aggravated Trafficking in Drugs, in violation of R.C. 2925.03(A)(2) and (C)(1)(e), a felony of the first degree; (2) Aggravated Possession of Drugs, in violation of R.C. 2925.11(A) and (C)(1)(d), a felony of the first degree; and (3) Participating in a Criminal Gang, in violation of R.C. 2923.42(A) and (B), a felony of the second degree.

{¶11} On March 27, 2024, Reynolds filed a motion for leave to file a motion to suppress, which the trial court granted on April 1, 2024. (Docket Entry No. 27). Reynolds filed the suppression motion that same day. (Docket Entry No. 28).

{¶12} On May 3, 2024, the State filed a response, and the trial court held a suppression hearing. (Docket Entry No. 34). Prior to the presentation of testimony, the parties and the trial court agreed that the sole issue was whether exigent circumstances justified the officers' warrantless entry into the residence. Supp.T. at 8. If so, the evidence would be admissible; if not, it would be suppressed. *Id.*

{¶13} At the conclusion of the hearing, the trial court directed the parties to submit post-hearing briefs. Supp.T. at 66. On May 15, 2024, the trial court denied the motion to suppress, concluding that Reynolds failed to establish his standing to challenge the warrantless search of the residence.

*Assignments of Error*

{¶14} Reynolds raises four Assignments of Error for our consideration,

"I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS BASED UPON STANDING WHEN THE STATE OF OHIO DOES NOT RAISE STANDING AS AN ISSUE."

"II. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS BASED UPON STANDING WHEN THE INDICTMENT, COURT DOCKET, AND STIPULATED SEARCH WARRANT LIST DEFENDANT'S ADDRESS AS THE LOCATION SEARCHED."

"III. THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE EXIGENT CIRCUMSTANCES DID NOT EXIST WHERE POLICE WAITED FOR OVER AN HOUR PRIOR TO THEIR WARRANTLESS SEARCH."

"IV. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO ESTABLISH BOTH STANDING TO CHALLENGE THE WARRANTLESS SEARCH AND RAISE A *FRANKS* ERROR ON THE FACE OF THE SEARCH WARRANT."

### Standard of Review

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court functions as the trier of fact and is best positioned to resolve factual disputes and assess witness credibility. *State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, reviewing courts must defer to the trial court's factual findings if supported by competent, credible evidence. *Burnside*, *supra*; *State v. Long*, 127 Ohio App.3d 328, 332 (4th Dist. 1998); *State v. Hill*, 2024-Ohio-522, ¶ 16 (5th Dist.).

**{¶16}** However, the application of law to those facts is reviewed de novo. *Burnside*, *supra*; *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997); *Ornelas v. United States*, 517 U.S. 690, 698 (1996). In conducting this review, we afford due weight to inferences drawn by trial judges and law enforcement. *Ornelas*, at 698.

## Issue for Review

**{¶17}** Whether the trial court erred in denying Reynolds' motion to suppress on the ground that he failed to establish a legitimate expectation of privacy in the premises searched.

## I. & II. Standing to Contest Search of the Premises

**{¶18}** Reynolds' first and second assignments of error are interrelated in that they challenge the trial court's ruling on standing; therefore, we address them together.

**{¶19}** The Fourth Amendment to the United States Constitution provides in part:

"The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated. * * *"

**{¶20}** A defendant may invoke Fourth Amendment protections only when an alleged search or seizure infringes upon his own constitutional rights. *Rakas v. Illinois*, 439 U.S. 128, 133-140 (1978); *State v. Wilson*, 2018-Ohio-396, ¶ 18 (5th Dist.). The defendant bears the burden of establishing standing, a legitimate expectation of privacy in the place searched. *State v. Dennis*, 79 Ohio St.3d 421, 426 (1997); *United States v. Padilla*, 508 U.S. 77, 81 (1993).

**{¶21}** This burden, however, arises only when the State challenges the defendant's standing. *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 13. Where the State fails to raise the issue below, it forfeits that argument on appeal. *Id.*, ¶ 24.

{¶22} Here, the State neither presented evidence nor contested Reynolds' standing during the suppression hearing. Accordingly, Reynolds was not required to establish standing.

{¶23} The trial court in its May 15, 2024, judgment entry overruling Reynolds' Motion to Suppress held: "The Court finds that before it may review the reasonableness of the police behavior related to a search, the Defendant must first be able to demonstrate that his 4th amendment right to privacy was violated. The Defendant has the burden of proving standing. Here, Defendant has failed to establish that he had any expectation of privacy in items located inside of 19 Dunbilt Court", vis-à-vis that Reynolds failed to establish standing to challenge the warrantless search.

{¶24} Based on the specific facts of this case, and because Reynolds was not required to establish standing to challenge the warrantless search of the Residence when the State failed to raise the issue, we find that the trial court erred in denying the motion to suppress on that sole basis.

{¶25} Reynolds' first assignment of error is sustained. His second assignment of error is moot.

### III. Exigent Circumstances

{¶26} Reynolds argues in his third assignment of error that no exigent circumstances justified the warrantless search. As the trial court did not rule on this issue, and in light of our resolution of the first assignment of error, this assignment is premature.

### IV. Ineffective Assistance of Counsel

{¶27} In his fourth assignment of error, Reynolds contends trial counsel was ineffective for failing to establish standing. Given our disposition of the first assignment of error, this claim is moot.

## Conclusion

{¶28} Reynolds' first assignment of error is sustained. Reynolds' second and fourth assignments of error are overruled as moot. His third assignment of error is overruled as being premature.

{¶29} The judgment of the Richland County Court of Common Pleas is reversed, and this matter is remanded to the trial court for further proceedings to determine whether exigent circumstances justified the officers' warrantless entry into the Residence.

By Popham, J.,

King, P.J., and

Hoffman, J., concur